William **JARRELL**, Appellant

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2011–CA–001399–MR.**

Court of Appeals of Kentucky.

Nov. 2, 2012.

Linda Roberts Horsman, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, CHIEF JUDGE; MOORE and THOMPSON, Judges.

*OPINION*

MOORE, Judge:

William Jarrell appeals the Boyd Circuit Court's order revoking his probation. Af-

ter a careful review of the record, we affirm because the circuit court did not abuse its discretion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jarrell was charged by criminal information with: first-degree wanton endangerment; fourth-degree assault; and alcohol intoxication in a public place, first offense. He moved to enter a guilty plea in accordance with the Commonwealth's Offer on a Plea of Guilty, which provided that the Commonwealth would recommend a sentence of five years for the wanton endangerment charge and a concurrent sentence of one year for the assault charge, as well as recommend that both sentences be probated in their entireties based upon certain conditions, including that Jarrell would "not ... possess, control or consume any alcohol or drugs, unless prescribed to him b[y] a local and reputable physician. ZERO TOLERANCE."[1]

The circuit court accepted Jarrell's guilty plea to the charges of first-degree wanton endangerment and fourth-degree assault. In its final judgment, the court sentenced Jarrell to five years of imprisonment for the wanton endangerment conviction and one year of imprisonment for the assault conviction, to be served concurrently. The court ordered those sentences to be probated for five years. The court set conditions for the probated sentences, which included that Jarrell should "[c]omply with the regulations of the Division of Probation and Parole and the directions of the probation officer" and he should "[n]ei-

ther use nor possess any alcohol, drugs or prescription medication not specifically prescribed by a local physician." During the sentencing hearing, the court orally ordered Jarrell to immediately report to Probation and Parole and to be drug tested as soon as he appeared there.

Two weeks later, a scheduling hearing was held during which the court scheduled Jarrell's probation revocation hearing.[2] Jarrell was present during this scheduling hearing, in which the court was informed that Jarrell had failed a drug screen. The court ordered that Jarrell's counsel be notified of the scheduled revocation hearing, and the court and Jarrell discussed who Jarrell intended to hire as counsel for that hearing.

Approximately two months later, a probation revocation hearing was held. During that hearing, Jarrell was present and represented by counsel. A Probation and Parole Officer testified that Jarrell had violated the terms of his probation by using oxycodone, and that Jarrell had signed a form admitting this violation after having failed to produce a urine sample.[3] The Probation and Parole Officer attested that Jarrell's admission form stated that Jarrell had used oxycodone that day. Evidence was introduced to show that approximately one hour had elapsed between the time the court had ordered Jarrell to immediately report to Probation and Parole and the time he actually reported to Probation and Parole to be drug tested. However, Jarrell was unable to produce a urine sample at that time. The Probation and Parole Officer testified that Jarrell left and came

---

**1.** The Commonwealth's Offer on a Plea of Guilty made no mention of the third count against Jarrell, *i.e.*, alcohol intoxication, but an order was subsequently entered dismissing that count.

**2.** There is no motion to revoke probation in the record before us but, according to the

circuit court's docket sheet, a bench warrant was issued and served on the day of sentencing for a "probation violation," although that warrant is not in the record either.

**3.** It does not appear that this form is in the record before us.

back three to four hours later, still unable to produce a urine sample, but he signed his admission form at that time.

Jarrell's counsel argued at the revocation hearing that Jarrell likely ingested the oxycodone prior to his sentencing hearing and, therefore, that he did not actually violate the conditions of his probation because he had ingested it before the court ordered him not to use or possess such drugs. Jarrell's counsel also asserted that the General Assembly had recently enacted legislation providing that graduated sanctions are preferable to revoking probation for probation violations. The circuit court stated that it did not believe the General Assembly intended graduated sanctions for probation violations in cases as violent as this one had been. The court found that Jarrell was a danger to society and that graduated sanctions were inappropriate, particularly considering he violated his probation within hours of being placed on probation. The circuit court's written order following the revocation hearing explained as follows:

> [At the time he was sentenced and his sentence was ordered to be probated, the] Court ordered the Defendant to appear immediately at Probation and Parole and submit to a drug test. The Defendant failed to follow directives of Probation and Parole and also did not produce for the test. Defendant failed to appear back in Court. A bench warrant was issued.

The circuit court found that Jarrell had violated his probation and entered an order revoking it and ordering him to be imprisoned for five years pursuant to the sentence he originally received.

Jarrell now appeals, contending that: (a) the circuit court erred when it revoked his probation in violation of his due process rights under the Fourteenth Amendment to the United States Constitution; and (b) the circuit court erred when it revoked his probation in violation of HB [4] 463.

## II. STANDARD OF REVIEW

 We review a circuit court's decision revoking a defendant's probation for an abuse of discretion. *See Miller v. Commonwealth,* 329 S.W.3d 358, 359–60 (Ky. App.2010).

> Probation revocation hearings must be conducted in accordance with minimum requirements of due process of law. KRS [5] 533.050(2) provides that the court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification.

> Probation revocation is not dependent upon a probationer's conviction of a criminal offense. Instead, the Commonwealth need only prove by a preponderance of the evidence that a probationer has violated the terms of probation.

*Miller,* 329 S.W.3d at 359 (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. VIOLATION OF JARRELL'S DUE PROCESS RIGHTS

Jarrell first alleges that the circuit court erred when it revoked his probation in violation of his due process rights under the Fourteenth Amendment to the United States Constitution. Specifically, he asserts that

---

4. House Bill of the Kentucky General Assembly.

5. Kentucky Revised Statute.

the record does not reflect that [Jarrell] had written notice of the claimed conditions of his probation, much less written notice of the claimed *violations* of that probation.... The record does not reflect that [Jarrell] received a written statement compliant with KRS 533.030(5). There is no motion for revocation in the record.

Jarrell also contends that the Commonwealth offered no proof that he violated his probation because it is likely that he ingested the oxycodone before he was sentenced, rather than during the hour that elapsed between his sentencing and when he first appeared at the Probation and Parole Office.

■ We first note that Jarrell's claims that the record does not show he received written notice of the conditions of his probation or of the violations of his probation are claims he raises for the first time on appeal. Because he did not raise these claims below, they are not reviewable on appeal, unless Jarrell can demonstrate palpable error affecting his rights. *See Bowling v. Commonwealth*, 981 S.W.2d 545, 552 (Ky.1998). Pursuant to RCr[6] 10.26,

> [a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

■ Jarrell alleges there is no proof in the record that he received a written statement of the conditions of his probation in accord with KRS 533.030(5).[7] That statute

provides: "When a defendant is sentenced to probation or conditional discharge, he shall be given a written statement explicitly setting forth the conditions under which he is being released." KRS 533.030(5). However, contrary to Jarrell's contention, the written, final judgment in this case provided that Jarrell should "[n]either use nor possess any alcohol, drugs or prescription medication not specifically prescribed by a local physician." Moreover, at the bottom of that final judgment, the Boyd Circuit Clerk certified that a copy of the judgment was mailed to Jarrell five days after his sentencing hearing. Although Jarrell may not have received the written judgment reiterating the conditions of his probation *before* he violated those conditions, as he apparently chose to violate them before the ink on the final judgment had time to dry, he was nevertheless orally informed of those probation conditions during his sentencing hearing and, thus, he was on notice.

In *Tiitsman v. Commonwealth,* 509 S.W.2d 275 (Ky.1974), the criminal defendant alleged that although he had moved for probation, he was unaware that his motion had been sustained and he had not been "advised of the conditions of the probation and not knowing of those conditions he could not be held accountable for a violation of them." *Tiitsman,* 509 S.W.2d at 276. The circuit court nevertheless revoked Tiitsman's probation and the highest court in Kentucky held on appeal as follows:

> We find the motion to vacate the judgment revoking the probation to be entirely without merit. Assuming that appellant may not have had knowledge of the probation of his sentence, or the

---

6. Kentucky Rule of Criminal Procedure.

7. We note that Jarrell does not allege that he did not receive written notice of his probation conditions; rather, he merely alleges that the

record does not reflect that he received written notice. We find Jarrell's allegation disingenuous, at best, pursuant to our review of the record, as discussed in this opinion.

conditions thereof, we cannot accede to appellant's view that his subsequent commission of crime must be ignored by the court as a factor in a revocation hearing. Every person on probation or who has a motion for probation pending must be charged with knowledge that subsequent criminal behavior may have some bearing upon his probation or his motion for probation. In appellant's case his knowledge of whether his motion for probation had been sustained or was still pending was immaterial for in either event the court had every right to consider his subsequent criminal behavior in determining on the one hand whether to grant the probation or on the other whether to revoke it if it had already been granted.

*Tiitsman,* 509 S.W.2d at 276. Tiitsman subsequently filed a petition for a writ of habeas corpus in the federal district court, and his petition was denied. He appealed that denial, and the United States Court of Appeals for the Sixth Circuit affirmed the denial of his petition. In doing so, the Sixth Circuit reasoned in part that "[c]ourts have often sustained the revocation of probation for criminal activity committed prior to defendants going on probation even though the defendant, not yet being on probation, could not technically violate a condition of probation." *Tiitsman v. Black,* 536 F.2d 678, 682 (6th Cir. 1976).

As in Tiitsman's case, Jarrell's argument in the present case that there was no proof in the record that he had received the written statement of his probation conditions before he violated them lacks merit. The courts are not required to ignore the fact that he violated the conditions of his probation, of which he had been orally informed mere hours earlier, in deciding whether to revoke that probation. Additionally, Jarrell certainly should have received the written notice of his probation conditions prior to his revocation hearing, which occurred more than two months after the judgment was mailed by the court clerk to Jarrell. Jarrell does not allege that he never received the written copy of the judgment containing his probation conditions. Therefore, Jarrell's claim that he did not have notice of the conditions of his probation lacks merit, and there was no error, palpable or otherwise, regarding the notice of his probation conditions.

Jarrell also contends that the record does not reflect whether he was provided written notice of the grounds for revocation.[8] Pursuant to KRS 533.050(2), "[e]xcept as provided in KRS 439.3108, the court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification." In *Messer v. Commonwealth,* 754 S.W.2d 872 (Ky. App.1988), this Court held:

> It seems clear that the purpose for the rule disappears or has been satisfied when the party appears with knowledge of the proceedings and participates or is given an opportunity to participate, does not even give the trial court the opportunity to correct any defect in the notice and only complains after his probation has been revoked and the case is on appeal.

*Messer,* 754 S.W.2d at 874.

Jarrell cites *Hunt v. Commonwealth,* 326 S.W.3d 437 (Ky.2010), in support of his

---

**8.** We note that Jarrell again does not allege that he did not *actually receive* written notice of the grounds for revocation; rather, he simply claims that the *record* does not reflect whether he was notified of the grounds for revocation. Therefore, Jarrell does not assert that he was never provided written notice. Regardless, he is unable to show that this alleged error was palpable.

claim that the record does not reflect whether he received written notice of the grounds for revocation, which he alleges was a violation of his due process rights. In *Hunt*, the probation officer listed Hunt's violations during Hunt's probation revocation hearing, but the probation officer was not sworn. In fact, "[n]o witnesses were sworn, and no testimony was taken." *Hunt*, 326 S.W.3d at 438. Additionally, the court had "appointed a public defender to represent Hunt just prior to the beginning of the hearing, and Hunt's new attorney had just received his case file earlier that morning." *Hunt*, 326 S.W.3d at 438. Furthermore, the circuit court in Hunt's case improperly shifted the burden of proof to Hunt, requiring him to show cause why his probation should not be revoked. The Supreme Court held that palpable error occurred in Hunt's case because the alleged probation violations were not "established through sworn testimony, with the opportunity for cross-examination by the probationer." *Hunt*, 326 S.W.3d at 439–40. The Court also held that the circuit court had improperly shifted the burden of proof, and that Hunt had not been provided an adequate amount of time to prepare a defense, due to the fact that his attorney was appointed just prior to the hearing. *Hunt*, 326 S.W.3d at 440.

■ The present case is distinguishable from *Hunt*. In the present case, Jarrell appeared at the probation revocation hearing and he was represented at the hearing by counsel, who cross-examined the Commonwealth's witness, *i.e.*, Jarrell's Probation Officer. Additionally, Jarrell was present at the scheduling hearing for the probation revocation hearing, and during the scheduling hearing, the Commonwealth alleged that the reason a probation revocation hearing was necessary was because Jarrell had failed a drug screen. Because Jarrell was orally informed of the

basis for the probation revocation hearing; he was present for the revocation hearing; he was represented by counsel at the hearing; and his counsel cross-examined the Commonwealth's witness regarding the basis for probation revocation, Jarrell cannot show that manifest injustice resulted from the alleged failure to provide him with written notice of the basis for the probation revocation. *See Hunt*, 326 S.W.3d at 439–40; *Messer*, 754 S.W.2d at 874. Consequently, although it was error for the Commonwealth not to ensure that written notice of Jarrell's probation violations were entered into the written record with certification that the written notice was mailed to Jarrell, the error is not palpable in this case.

■ Regarding Jarrell's allegation that the Commonwealth offered no proof that he violated his probation because it is likely he ingested the oxycodone before he was sentenced, rather than during the hour that elapsed between his sentencing and when he first appeared at the Probation and Parole Office, this claim lacks merit. The Probation and Parole Officer testified during Jarrell's revocation hearing that Jarrell had violated the terms of his probation by using oxycodone, and that Jarrell had signed a form *admitting this violation* after having failed to produce a urine sample. The Probation and Parole Officer testified that Jarrell's admission form stated that Jarrell had used oxycodone that day, *i.e.*, the day of his sentencing. It is important to note that Jarrell does not deny he signed such a form admitting this probation violation. Therefore, because the Probation and Parole Officer attested that Jarrell had admitted to the probation violation when he signed the form and Jarrell does not deny signing the admission form, this evidence was sufficient to meet the "preponderance of the evidence" standard for revoking his proba-

tion. Consequently, the circuit court did not abuse its discretion in revoking Jarrell's probation based upon his admission that he had violated the terms of his probation.

## B. HB 463

■ Jarrell next contends that the circuit court erred when it revoked his probation in violation of HB 463. Specifically, he argues that, based upon HB 463, KRS 439.551 was amended to require graduated sanctions for probation violations, and that the circuit court's "knee jerk revocation flies in the face of the clear desire of the General Assembly." Kentucky Revised Statute 439.551 provides:

> (1) The department shall promulgate administrative regulations to develop a system of graduated sanctions for responding to technical violations of probation. The department shall consult with the Supreme Court when promulgating these administrative regulations.
>
> (2) The administrative regulations shall create a system of graduated sanctions with the following objectives:
>
>> (a) Responding quickly and consistently to violations of probation, based on the nature of the violation and the risk level of the supervised individual;
>>
>> (b) Reducing the time and resources expended by the department and the courts to respond to violations; and
>>
>> (c) Reducing the commission of new crimes and revocation rates.

Although KRS 439.551 is a directive by the General Assembly for the department to promulgate administrative regulations for graduated sanctions, another statute that became effective the same day as KRS 439.551 is KRS 439.3106, which provides:

> Supervised individuals shall be subject to:

> (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
>
> (2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Therefore, the General Assembly clearly wanted incarceration to remain a possible penalty for probation violations, particularly in cases where the defendant is found to be a risk to prior victims or to the community at large.

In the present case, the circuit court expressed its concern orally during the revocation hearing that Jarrell had violated his probation on the day that he was sentenced and within hours of being probated. The court stated that, due to Jarrell's failure to comply with the conditions of his probation during the first few hours of his probation, and due to the violent nature of the crimes he committed, the court was of the opinion that revocation of his probation was the appropriate sanction for his probation violation. Additionally, in its written order revoking Jarrell's probation, the court explained:

> [T]he Court having given due consideration to the nature and circumstances of the crime, and the history, character, and condition of the defendant, the Court is of the opinion that imprisonment is necessary for protection of the public because there is a substantial risk that during a period of probation or conditional discharge the defendant will

commit another felony; that the defendant is in need of correctional treatment that can be provided most effectively by his ... commitment to a correctional institution; [and] that probation in this matter will unduly depreciate the seriousness of the defendant's crime.

Thus, the circuit court appropriately considered the General Assembly's wishes, as espoused in KRS 439.3106, which became effective the same day as KRS 439.551, in deciding to revoke Jarrell's probation. We find no abuse of discretion in that decision.

Accordingly, the order of the Boyd Circuit Court is affirmed.

ACREE, Chief Judge, Concurs.

THOMPSON, Judge, dissents and files separate opinion.

THOMPSON, Judge, Dissenting:

I respectfully dissent. Under the current version of our penal code, Jarrell's probation could not be revoked for a single use of oxycodone.

In response to the rapidly rising rate of incarceration and its costs, the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463, was enacted as a comprehensive revision of our penal system. *See* Commonwealth of Ky. Legislative Research Commission, *Report of the Task Force on the Penal Code and Controlled Substances Act,* Research Memorandum No. 506 at 6 (2011). In the context of sentencing drug offenders, the General Assembly made a specific legislative finding that community based treatment can be used as an effective tool to reduce criminal risk factors and that appropriate treatment plans offer potential alternatives to incarceration.

In addition to revisions to our penal sentencing provisions, substantial changes were made to our probation revocation provisions. Notably, the legislature expressly declared that even if a probation violation is found, the court must make two findings before revoking the offender's probation and imposing the sentence of incarceration. Specifically, the court must find that the violation constitutes a significant risk to prior victims or the community, and the probationer cannot be managed in the community. KRS 439.3106(1).

The circuit court made written findings that Jarrell's imprisonment was necessary to protect the public because there was a substantial risk that during probation he will commit another felony, he is in need of correctional treatment that can be provided most effectively through commitment to a correctional institute, and probation would unduly depreciate the seriousness of his crime. In doing so, it only considered the violent nature of the offenses to which Jarrell pled guilty, first-degree wanton endangerment and fourth-degree assault and that Jarrell consumed illegal drugs in violation of his probation.

The 2011 changes to our penal system were sweeping and enacted after extensive research, debate, and analysis and were, in part, accomplished for the purpose of increasing community drug treatment instead of incarceration. As a result, KRS 439.3106(1) does not allow a trial court to merely consider a probationer's underlying conviction to determine that he is a significant risk to the community. Instead, the statute requires that the probation violation constitute a significant risk to prior victims or the community at large. KRS 439.3106(1). A single use of oxycodone does not support a finding that he poses such a risk.

Bare recitations that a probationer poses a significant risk to prior victims or the community and cannot be appropriately managed in the community without factual basis is arbitrary, unreasonable, and un-

fair. With the intent, spirit, and purpose of our newly enacted HB 463 in mind, I submit that this Court must reverse and remand this case to the trial court for consideration of imposing sanctions other than incarceration.