RENDERED:  MARCH 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0542-MR


NATALIE PLUMLEE                                                   APPELLANT


|  | APPEAL FROM ALLEN CIRCUIT COURT |
|---|---|
| v. | HONORABLE MARK A. THURMOND, JUDGE |
|  | ACTION NO. 20-CR-00016 |


COMMONWEALTH OF KENTUCKY                              APPELLEE

AND

NO. 2024-CA-0543-MR


NATALIE PLUMLEE                                                   APPELLANT


|  | APPEAL FROM ALLEN CIRCUIT COURT |
|---|---|
| v. | HONORABLE MARK A. THURMOND, JUDGE |
|  | ACTION NO. 20-CR-00016 |


COMMONWEALTH OF KENTUCKY                              APPELLEE

<u>OPINION</u><br><u>AFFIRMING</u>

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: Natalie Plumlee appeals from the March 20, 2024, order of the Allen Circuit Court revoking her probation and imposing a sentence of imprisonment. Plumlee argues that the circuit court abused its discretion by revoking her probation based primarily on new criminal charges that remain pending and were vigorously contested at the revocation hearing, and by failing to properly apply and make the findings required by KRS[1] 439.3106.

This matter is before the Court in two appeals, No. 2024-CA-0542-MR and No. 2024-CA-0543-MR.[2] By order entered September 10, 2024, this Court granted Plumlee's motion to consolidate the appeals and ordered that they proceed as a single appeal for all purposes, including briefing.

After careful review of the record, we conclude that the circuit court conducted a full evidentiary hearing, made findings supported by the evidence, and acted within the bounds of its discretion. Accordingly, we affirm.

---

[1] Kentucky Revised Statutes.

[2] Both appeals arise from the same circuit court action and challenge the same probation revocation order.

## II. BACKGROUND

On September 7, 2021, Plumlee entered guilty pleas in Allen Circuit Court Case No. 20-CR-00016 to cultivation of marijuana (five or more plants), possession of drug paraphernalia, receiving stolen property valued between $5,000 and $10,000, first-degree trafficking in a controlled substance (methamphetamine, first offense), and endangering the welfare of a minor. By judgment entered November 3, 2021, the circuit court imposed an aggregate sentence of five years' imprisonment, which was probated for five years. As a condition of her probation, Plumlee was required to refrain from committing new criminal offenses.

On July 26, 2023, Plumlee's probation officer filed a violation-of-supervision report alleging that Plumlee had violated the conditions of her probation by committing new felony offenses. The report was based on Plumlee's July 25, 2023 arrest and alleged conduct giving rise to new charges, including complicity to promoting contraband, engaging in organized crime, possession of marijuana, and possession of drug paraphernalia. A supplemental violation report later noted that Plumlee was also charged as a second-degree persistent felony offender. Plumlee pleaded not guilty to the new charges, which remain pending.

The circuit court conducted a probation revocation hearing on November 21, 2023, which was continued and concluded on January 23, 2024. At the hearing, the Commonwealth presented testimony from Detective Trevor

Thompson of the Allen County Sheriff's Office. Plumlee presented testimony from her neighbor, Sherry Penrod, and also testified on her own behalf.

Detective Thompson testified regarding two separate incidents in July 2023 at the Allen County Detention Center in which packages containing suspected contraband were thrown over the detention center's perimeter fence into the recreation area. According to his testimony, video surveillance footage showed a white Nissan stopping outside the detention center on two different occasions. On each occasion, a male passenger exited the vehicle and threw a package over the fence.

Detective Thompson testified that law enforcement later observed Plumlee driving a white Nissan at the detention center on a separate occasion. Officers noted that the vehicle Plumlee was driving had distinctive damage to the front bumper that was consistent with the damage visible on the white Nissan depicted in the surveillance footage from the contraband incidents. Based on that observation, officers concluded that the vehicle involved in the incidents was the same vehicle driven by Plumlee.

The first incident involved Levi Polson, who told law enforcement that a woman he did not know picked him up, took him to her residence, where a package was prepared, and then drove him to the detention center. Polson later identified Plumlee from a photograph as the woman who drove him and described

the residence where the package was prepared in a manner consistent with Plumlee's home.

The second incident involved James Spivey, who was identified after officers spoke with Plumlee's neighbor. Spivey told law enforcement that Plumlee drove him to the detention center and paid him to throw a package over the fence.

Detective Thompson further testified that inmates retrieved the packages after they were thrown into the recreation area and that inmates later reported the presence of methamphetamine within the facility. He acknowledged that the packages themselves were never recovered and that no methamphetamine was physically seized during the investigation. However, based on statements from inmates, recorded jail telephone conversations, and the fact that approximately forty inmates tested positive for methamphetamine during the relevant time period, Detective Thompson testified that he believed the packages contained methamphetamine.

As part of the investigation, officers obtained and executed a search warrant for Plumlee's residence. During the search, officers located marijuana and a marijuana grinder. Detective Thompson also testified regarding jail telephone calls and text messages between Plumlee and Joey Proctor, an incarcerated individual who was Plumlee's boyfriend at the time. Based on those communications and the surrounding circumstances, Detective Thompson testified

that he believed the conversations reflected coordination related to the delivery of contraband to the detention center.

Plumlee denied facilitating the delivery of contraband and testified that she was not involved in the alleged offenses. She testified that although the vehicle depicted in the videos appeared to be her car, she frequently allowed other individuals to use it. Plumlee's neighbor and landlord, Sherry Penrod, testified that on one of the dates in question, Plumlee and her vehicle were at home during the relevant time period, and that Plumlee was at home that morning while her hot tub was being repaired.

Following the revocation hearing, the circuit court entered a nineteen-page Memorandum Opinion, Findings of Fact, Conclusions of Law, and Order Revoking Probation on February 26, 2024. In that order, the circuit court found by a preponderance of the evidence that Plumlee committed the new offenses alleged in the violation report and, pursuant to KRS 439.3106, concluded that she posed a significant risk to the community, could not be appropriately managed in the community, and that sanctions short of revocation were not appropriate given the nature and circumstances of the violations. On March 20, 2024, the circuit court entered an amended final judgment, which revoked Plumlee's probation based on the circuit court's prior findings and conclusions. This appeal followed.

-6-

## II. ANALYSIS

"[P]robation is a privilege by which the trial court restores conditional liberty to the probationer." *Barker v. Commonwealth*, 379 S.W.3d 116, 122 (Ky. 2012). The court must provide, as an explicit condition of every sentence of probation or conditional discharge, that "the defendant not commit another offense during the period for which the sentence remains subject to revocation." KRS 533.030(1). Otherwise, "[t]he conditions of probation and conditional discharge shall be such as the court, in its discretion, deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him or her [in doing] so." *Id.*

Before the expiration of a defendant's probation, "[t]he court may summon the defendant to appear before it or may issue a warrant for his arrest upon a finding of probable cause to believe that he has failed to comply with a condition of the sentence[.]" KRS 533.050(1)(a). A defendant charged with a probation violation is entitled to written notice of the grounds for revocation or modification, representation by counsel, and a hearing on the charge. KRS 533.050(2). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 786–87, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

"[T]he standard for revocation of probation is proof, by a preponderance of the evidence, that a violation has occurred." *Hunt v.*

*Commonwealth*, 326 S.W.3d 437, 439 (Ky. 2010). Because of the lower burden of proof required to revoke probation, "a trial court could revoke probation before a jury convicts the probationer by finding him guilty beyond a reasonable doubt on identical facts," and "could properly revoke probation on less evidence than is required for a jury to convict." *Barker*, 379 S.W.3d at 123.

Following a hearing, a defendant found to have violated probation is subject to "two possible outcomes: revocation and possible incarceration, KRS 439.3106(1), or the imposition of sanctions 'other than revocation,' KRS 439.3106(2)." *Commonwealth v. Andrews*, 448 S.W.3d 773, 777 (Ky. 2014). "[I]ncarceration for failure to comply with the conditions of supervision" is an available option when the defendant's "noncompliance constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]" KRS 439.3106(1)(a). Proper considerations in making these determinations include, but are not limited to, the nature of the violation and the defendant's prior criminal history. *Andrews*, 448 S.W.3d at 780–81.

We review a trial court's probation revocation decision under the deferential abuse-of-discretion standard. *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009); *Kendrick v. Commonwealth*, 664 S.W.3d 731, 734 (Ky. App. 2023). As applied in the context of probation revocation, "we will not hold a trial

court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

Plumlee first argues that the circuit court erred in finding that she committed the new offenses alleged in the violation report. This argument is unavailing. In its February 26, 2024 order, the circuit court methodically addressed each charged offense, identified the relevant elements, and explained the evidence it found sufficient to satisfy those elements under the applicable standard of proof. The court expressly recognized that a probation revocation proceeding is not a criminal trial and that the Commonwealth was required to prove the alleged violations only by a preponderance of the evidence, not beyond a reasonable doubt. *Barker*, 379 S.W.3d at 123. A preponderance of the evidence means evidence that, when considered and compared with that opposed to it, has more convincing force and establishes that a fact is more likely true than not.

Applying that standard, the circuit court's findings were supported by the evidence presented at the revocation hearing, and Plumlee has failed to demonstrate that the court's conclusions fell outside the range of permissible decisions. Moreover, the court further found Plumlee's testimony not credible and stated that it afforded her testimony no weight. As the finder of fact, the circuit

court had broad discretion to assess witness credibility and to determine the weight to be given to the evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Plumlee next argues that the circuit court failed to make sufficiently particularized findings to support revocation under KRS 439.3106, relying primarily on *Commonwealth v. Alleman*, 306 S.W.3d 484 (Ky. 2010), and *Helms v. Commonwealth*, 475 S.W.3d 637 (Ky. App. 2015). Both are distinguishable.

*Alleman* was decided before the enactment of KRS 439.3106 and did not address the statutory findings now required in probation revocation proceedings. Rather, the sole issue before the Kentucky Supreme Court in *Alleman* was whether a trial court's findings of fact and reasons for revocation, when stated orally on the record rather than reduced to writing, were sufficient to satisfy a probationer's due process rights. *Id.* at 484–85. The Court held that oral findings and reasons for revocation satisfy due process so long as they are preserved by a reliable means sufficiently complete to permit meaningful appellate review. *Id.* Thus, *Alleman* did not require trial courts to make particularized written findings identifying each item of evidence relied upon, nor did it impose the statutory analysis later codified in KRS 439.3106. In any event, the concern addressed in *Alleman* is not present here, where the circuit court entered a nineteen-page written order setting forth detailed findings of fact and conclusions of law supporting revocation.

-10-

In *Helms,* the trial court revoked probation based on the enforcement of a "zero-tolerance" provision, and the record demonstrated that the court treated revocation as automatic upon proof of a violation, rather than exercising the discretion required by KRS 439.3106. *Helms*, 475 S.W.3d at 644–45. As a result, this Court concluded not only that the trial court failed to meaningfully consider the statutory factors governing incarceration, but also that the evidence did not support the court's conclusory findings that the defendant posed a danger to the community or could not be managed through lesser sanctions. *Id.*

Here, by contrast, the circuit court's findings were supported by the evidence presented at the revocation hearing. As the circuit court explained, Plumlee's conduct endangered not only herself, but also inmates and correctional officers by facilitating the introduction of illegal drugs into a detention facility. The court further noted that Plumlee was found in possession of marijuana and drug paraphernalia at her residence, conduct she did not dispute, and that those items were discovered during a lawful search of her home.

As this Court has recognized, "[a] defendant who will not cooperate with the conditions of her supervision may indeed constitute a significant risk to the community at large and be unmanageable in the community." *Compise v. Commonwealth*, 597 S.W.3d 175, 182 (Ky. App. 2020). *See also Kendrick*, 664 S.W.3d at 735; *New v. Commonwealth*, 598 S.W.3d 88, 90–91 (Ky. App. 2019).

The evidence, including Plumlee's own admissions, supported the circuit court's determination that she violated the conditions of her probation and that her conduct demonstrated she posed a danger to and could not be appropriately managed in the community. *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

Plumlee also argues that the circuit court failed to adequately consider sanctions short of revocation. The record again contradicts this claim. In its February 26, 2024 order, the circuit court expressly considered whether lesser sanctions would be appropriate and concluded they would not. The court explained:

> Having given these requirements due consideration, the Court concludes as a matter of law that the probation violations described hereinabove constitute a significant risk to the community at large and that Defendant Plumlee cannot be appropriately managed in the community. In support of this conclusion, the Court further finds that lesser sanctions would be fruitless in light of the fact that despite having been afforded probation, Defendant Plumlee engaged in brazen conduct affecting approximately forty (40) inmates and measures less than incarceration are unlikely to mitigate the risk she poses to the community.

2/26/2024 Order at 17–18, Conclusions of Law ¶ 3.

While KRS 439.3106 requires a trial court to consider sanctions other than revocation, it does not require the court to impose the least restrictive sanction available. *McClure*, 457 S.W.3d at 732; *Kendrick*, 664 S.W.3d at 736; *Hall v. Commonwealth*, 566 S.W.3d 578, 581 (Ky. App. 2018). The circuit court retains

discretion to revoke probation when the statutory criteria are met, and Plumlee has not demonstrated that the court abused that discretion in this case.

## III. CONCLUSION

For the foregoing reasons, we affirm the March 20, 2024 judgment of the Allen Circuit Court revoking Natalie Plumlee's probation.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General

Kristin L. Condor
Assistant Attorney General
Frankfort, Kentucky