**Jerri Engleman MARSHALL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 18, 1982.

Discretionary Review Denied Oct. 5, 1982.

Thomas W. Amann, Covington, for appellant.

Steven L. Beshear, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, for appellee.

Before GUDGEL, COOPER and VANCE, JJ.

VANCE, Judge.

This is an appeal from a judgment of the Kenton Circuit Court revoking appellant's probation and ordering her to serve a two year sentence. Appellant entered a guilty plea to a charge of theft by unlawful taking of property valued over $100.00 and was sentenced to two years by a judgment of May 5, 1981. She was granted probation on the condition that she complete a drug abuse program, the Teen Challenge Program, in Columbus, Ohio. After a hearing in August of 1981, the circuit court revoked her probation on the grounds that she had failed to participate in and complete the program. The narrow question presented for review is whether the court erred in denying the appellant the right to confront witnesses against her at the hearing.

Terri Slicer, appellant's probation and parole officer, testified at the hearing. Through her, the Commonwealth introduced into evidence a letter written to Ms. Slicer from Patrice Blair, Teen Challenge Program Director. The letter indicated the appellant had refused to fully participate in the program, was found to be in possession of controlled substances while supposedly participating and was released without completing the program. In addition, the probation officer introduced evidence of a telephone conversation between her and a Teen Challenge staff member, Mary Mussman, also indicating the appellant had not completed the program. This is essentially the only evidence introduced. Neither Ms. Mussman or Ms. Blair were introduced as witnesses at the hearing.

Appellant argues that evidence concerning conversations with Ms. Mussman and

the letter were hearsay and the appellant was denied her right to confront these two witnesses because the Commonwealth failed to introduce them in person.

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) the Supreme Court indicated that in parole revocation hearings certain due process rights must be provided to the defendant. These include:

(a) Written notice of the claimed violations of parole;

(b) Disclosure to the parolee of evidence against him;

(c) Opportunity to be heard in person and to present witnesses and documentary evidence;

(d) The right to confront and cross-examine adverse witnesses (*unless the hearing officer specifically finds good cause for not allowing confrontation*);

(e) A "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and,

(f) A written statement by the fact-finders as to the evidence relied on and reasons for revoking parole. *Id.* at 489, 92 S.Ct. at 2604 (emphasis supplied)

The Court went on to say, however:

We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. *Id.*

The essence of *Morrissey* was two-fold: While it indicated certain rights must be afforded the defendant in these hearings it also emphasized that such hearings were *not* criminal prosecutions and the full panoply of rights due the defendant in criminal prosecutions did not apply to parole revocations. The Court emphasized that such hearings were an "informal process."

In *Gargon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court held the reasoning of *Morrissey* also applied to probation revocation proceedings. Again, however, the Court emphasized the informal nature of such proceedings and the fact that the defendant is not entitled to a "trial" on the issues. The Court noted:

An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, *we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits depositions, and documentary evidence.* Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements. *Id.* at 782 n.5, 93 S.Ct. at 1760 (emphasis supplied)

Clearly *Morrissey* and *Scarpelli* did not intend to foreclose the admission of hearsay evidence at these informal type of hearings and there is no absolute right to confront witnesses, especially when the reliability of the witnesses, here trained personnel in an organized drug abuse program, can be easily ascertained.

Appellant also argues that the court should have made a finding that the witnesses were unavailable, but we do not find this was a necessary requirement for these witnesses. Clearly the witnesses were unavailable, being in Columbus, Ohio and outside the court's jurisdiction, and appellant never moved the court for such a finding below.

Appellant made no attempt to dispute the information presented by her probation officer, and presented no evidence that she had completed or attempted to complete the program.

Under these circumstances, we believe the hearing met all due process requirements.

The judgment is affirmed.

All concur.